IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| VELKIS JOHNSTON, et al., | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. G-06-CV-313 |
| | ) |
| MULTIDATA SYSTEMS | ) |
| INTERNATIONAL CORP., | ) |
| MDS NORDIAN, INC. | ) |
| MDS (CANADA), INC., | ) |
| and MDS, INC., | ) |
| Defendants. | ) |

## DEFENDANT MULTIDATA SYSTEMS INTERNATIONAL CORP.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

Respectfully submitted,

| | |
|---|---|
| **Douglas W. Poole, TX #16115600** | Clayton E. Dickey, MO # 41269 |
| **Southern District #619** | Matthew S. Jensen, MO  #49550 |
| McLeod, Alexander, Powel & Apffel, | Jacquelyn C. Jovenal, MO #55003 |
| A Professional Corporation | **Rasmussen, Willis, Dickey & Moore, L.L.C.** |
| 802 Rosenberg, P.O. Box 629 | 9200 Ward Parkway, Suite 310 |
| Galveston, Texas 77553-0629 | Kansas City, Missouri 64114 |
| Telephone: 409-763-2481 | Telephone (816) 960-1611 |
| Facsimile:  409-762-1155 | Facsimile (816) 960-1669 |

**Attorneys for Defendant
Multidata Systems International Corp.**

## MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

COMES NOW Defendant, Multidata Systems International Corporation (hereinafter "MSIC"), who respectfully moves this Court, pursuant to 28 U.S.C. 1292(b), for certification for an interlocutory appeal of this court's Order dated April 30, 2007. In support of this motion, Defendant respectfully asserts that this Court's Order encompasses controlling questions of law concerning both this Court's personal jurisdiction and discretionary jurisdiction, and that there is substantial ground for difference of opinion such that an immediate appeal from the Order may materially advance the ultimate termination of this litigation pursuant to 28 U.S.C. §1292(b).

### I. 28 U.S.C. § 1292(b)

In *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 881 (5th Cir. 1987), the Fifth Circuit admonished district courts to "be hospitable to applications for Interlocutory Appeals" in *forum non conveniens* settings. "We recognize that the decision to certify is, however, within the considered discretion of the trial judge and…we cannot direct that all forum non conveniens issues be certified. The district courts should bear in mind, however, that pretrial certification of this issue not only obviates a possible useless trial, but affords an effective review by this court." *Id.,* at 881, n. 5. *See also, In Re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1167, n.34 (5th Cir. 1987) ("Certification [under 28 U.S.C. § 1292(b)] is a proper method to obtain pre-trial appellate review of a *forum non conveniens* decision.") *See also Lemery v. Ford Motor Co.,* 244 F.Supp.2d 720, 728 (S.D. Tex. 2002).

Pursuant to §1292(b), a district court may certify a non-final order for immediate appeal if:

1) the facts of the case involve a **controlling question of law** as to which **there is substantial ground for difference of opinion**; and

2) an immediate appeal from the order may **materially advance the ultimate termination of the litigation.**

A.  **There are Controlling Questions of Law as to Which There are Substantial Grounds for Difference of Opinion in this Case.**

    1.  **Question of Law:** Can the refusal to give *res judicata* effect and/or direct estoppel effect to the Missouri courts' *forum non conveniens* rulings be upheld as a matter of law where the Missouri courts left open to the plaintiffs an avenue for returning to Missouri? This Honorable Court answered this controlling question of law in the affirmative. There is substantial ground for the Fifth Circuit to have a difference of opinion on this question.

When the original Missouri trial judge dismissed the plaintiffs' claims on *forum* grounds he specifically said he would reconsider allowing plaintiffs to re-file in his court under certain conditions. The Missouri Court of Appeals affirmed. *See Chandler v. Multidata Sys. Int'l Corp.*, 163 S.W.2d 537 (Mo. Ct. App. 2005). In so doing, the Missouri Court of Appeals cited and relied upon several United State Supreme Court and other federal court cases in addition to Missouri cases. Thus, while it is true that Missouri *forum* analysis differs somewhat from federal court *forum* analysis the differences are not so fundamental or pronounced that it renders the Missouri courts' pronouncements unworthy of *res judicata* and direct estoppel effect. True, the Missouri courts compared Missouri as a forum with Panama as a forum as opposed to "the whole of *America*". [Emphasis original.] Order of April 30, at 9. Yet the same would be true of virtually any *forum non conveniens* decision involving a choice between the particular state at issue.

This Court denied the instant defendants' *forum non conveniens* arguments in large part due to the recent enactment of a statute in Panama that plaintiffs argue make the filing of their claims in Panama a legal impossibility. If plaintiffs were correct in that regard as this Court has found to be the case at this time, then the plaintiffs, by virtue of the Missouri courts' conditional dismissal, have recourse in Missouri. The plaintiffs are free to re-file their claims there and assert that circumstances have changed in Panama such that Panama is no longer an available forum. Respect for the Missouri tribunals' exhaustive dealings with this issue compels providing them with an opportunity to address the question first. In short, there are substantial grounds for a difference of opinion on this issue.

  **2.**  **Question of Law:** Can there be, as a matter of law, a finding of "continuous and systematic contacts" by a foreign corporation with no other ties to Texas which sold $130,000 worth of goods to Texas businesses over the course of five years? This Honorable Court answered this controlling question of law in the affirmative. There is substantial ground for the Fifth Circuit to have a difference of opinion on this question.

  In *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408 (1984), "the Supreme Court found the defendant's contacts with the State of Texas insufficient to support an exercise of general personal jurisdiction by that state's courts, even though the defendant had ventured to Texas to negotiate a contract, had purchased helicopters and related equipment from Texas vendors at regular intervals, and had sent prospective pilots and other personnel to Texas for training." *Bearry v. Beech Aircraft,* 818 F.2d 370, 375 (5th Cir. 1987). In its Order of April 30, this Court distinguished *Helicopteros* from the instant action in that "[t]he *Helicopteros* defendants *purchased* a substantial amount of goods from a corporation located in Texas whereas MSIC *sold* goods and services to Texas medical facilities." [Emphasis original.] Order of April 30 at 24. The Fifth Circuit may have a difference of opinion as to whether a distinction may be drawn between *purchases* and *sales* as evidenced by the following statement by the Fifth Circuit: "In short, that Beech products *flow into Texas* does not create a general presence in that state." [Emphasis added.] *Bearry, supra,* 818 F.2d at 376.

  This Court distinguished *Bearry* by observing that "the *Bearry* defendant purposefully structured its business to avoid the jurisdiction of courts outside its home state, whereas here, MSIC purposefully directed its service plans to Texas customers, traveled to Texas to perform said services, and did not attempt to avoid Texas jurisdiction by including a forum selection clause in its contracts." Order of April 30, at 24. This Court's observation of *Bearry* is an accurate one but there could be a difference of opinion as to whether this distinction between the *Bearry* defendant and MSIC is sufficient to allow the exercise of personal jurisdiction over MSIC. Like the defendant in *Bearry*, MSIC is a Delaware corporation with its headquarters in a state other than Texas, MSIC has never qualified to do business nor maintained an agent for service of process in Texas, MSIC has no telephone listing in Texas, it has no warehouse in Texas, it has never had a bank account in Texas, it has never insured any person in Texas, it owns no real estate in Texas and it has no employees or directors permanently assigned to Texas. Additionally, like the *Bearry* defendant, MSIC has a nationwide advertising program. In short, while the fact that the *Bearry* defendant made a calculated effort to structure its dealings so as to avoid jurisdiction in Texas, this fact alone is arguably insufficient to distinguish the *Bearry* facts from the instant facts. Accordingly, the Fifth Circuit may have a difference of opinion with this Court over this controlling question of law.

    **3.**    **Question of Law:** Can there be, as a matter of law, a finding of "continuous and systematic contacts" by a foreign corporation with no other ties to Texas because it sold $130,000 worth of goods to Texas businesses because the goods might potentially be used in the treatment of Texas-based patients? This Honorable Court answered this controlling question of law in the affirmative. There is substantial ground for the Fifth Circuit to have a difference of opinion on this question.

In distinguishing *Bearry*, this Court stated that the $130,000 worth of medical equipment MSIC sold into Texas "will potentially be used in the treatment of hundreds (or even thousands) of patients [and] has a more direct impact on Texas citizens than the airframe assemblies, which were used in aircraft that may not even have been sold to Texas citizens." Order of April 30, at 22. The Fifth Circuit may have a difference of opinion as to whether the "potential" of a product to cause harm (regardless of the nature of the product) is a sufficient ground for the exercise of general personal jurisdiction. "The concern that injuries might occur in the state or might somehow implicate Texas component-part manufacturers are adequately protected. Beech is subject to the specific jurisdiction of Texas courts when its product causes injuries or when it breaches a contract in Texas." *Bearry, supra,* 818 F.2d at 377. So, too, is MSIC subject to the specific jurisdiction of Texas courts were any of its products to cause injury in Texas.

    **4.**    **Question of Law:** Can there be, as a matter of law, a finding of "continuous and systematic contacts" by a foreign corporation which sold $130,000 worth of goods to Texas businesses located in eight Texas cities over the course of five years? This Honorable Court answered this controlling question of law in the affirmative. There is substantial ground for the Fifth Circuit to have a difference of opinion on this question.

This Court in *Smirch v. Allied Shipyard, Inc.,* 164 F.Supp.2d 903, 910 (S.D.Tx. 2001), citing the Fifth Circuit's decision in *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 779 (5th Cir. 1986), acknowledged that it was required in assessing general jurisdiction to examine the defendant's "contacts *in toto* to determine whether they constitute the kind of continuous and systematic contacts necessary to satisfy due process."

> In rigorously applying *Helicopteros* to personal jurisdiction suits in Texas, the Fifth Circuit has even denied jurisdiction where defendant corporations have procured hundreds of millions of dollars in revenue from Texas customers. *See, eg., Access Telecom, Inc. v. MCI Telecommunications Corp.,* 197 F.3d 694, 717-18 (5th Cir.1999) (finding no general jurisdiction even though defendant's "revenues derived from Texas residents totaled millions of dollars a month."); Bearry [supra], (concluding that the flow of $250 million worth of defendant's products via Texas dealers did "not create a general presence in that state").

*Smirch, supra,* 164 F.Supp. 2d at 910.

In its Order of April 30th in the instant action, this Court distinguished *Smirch* because the plaintiffs in the instant action had presented stronger proof that MSIC conducted business with specific Texas-based companies. Assuming that as a given, the question remains whether

MSIC's "contacts *in toto*" are qualitatively sufficient "to satisfy the formidable threshold set forth in *Helicopteros*". Order of April 30, at 20. This Court answered that question in the affirmative. However, given the language, analyses and conclusions in *Helicopteros, Holt Oil* and *Bearry* there could well be a substantial difference of opinion on this controlling question of law.

     5.    **Question of Law:** Can there be, as a matter of law, a finding of fair play and substantial justice, in conjunction with subjecting a Defendant to personal jurisdiction in a forum from which compulsory process over witnesses and documents cannot be issued? This Honorable Court answered this controlling question of law in the affirmative. There is substantial ground for the Fifth Circuit to have a difference of opinion on this question.

    The finding of personal jurisdiction over MSIC presents a controlling question of law as to the notions of fair play and substantial justice under *Asahi. Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987). Factors to be considered in examining the fairness of an exercise of personal jurisdiction are: 1) the burden to the Defendant; 2) the interest of the forum; 3) a plaintiff's interest in obtaining relief; 4) the interest in the efficient resolution of controversies; and 5) fundamental substantive social policies. *Id.* In cases involving foreign corporations, the United States Supreme Court has recognized that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.*, p. 114.

    This Court found that the defendants' inability to subpoena witnesses and documents would not substantially alter their defense in this case. MSIC would not be able to defend its case properly in the state of Texas. It would not be able to subpoena witnesses located in Panama, obtain copies of document located in Panama or inspect the products claimed to be defective which are located in Panama. Further, all issues cannot be resolved in this case as filed in Texas. The patients are all Panamanian patients, or survivors of Panamanian patients, who claim to have been injured in Panama. Due to Plaintiffs' selection of Texas as a forum for this action, however, MSIC is deprived of the chance to file a Third-Party Petition against ION, its staff, and Plaintiffs' physicians. Whether or not this offends the idea of fair play and substantial justice is a controlling question of law of which a substantial difference of opinion can exist.

- 5 -

B.  **An Immediate Appeal from the Order May Materially Advance the Ultimate Termination of the Litigation.**

A party seeking certification of a trial court's order pursuant to §1292(b) must demonstrate that an immediate appeal from the order may materially advance the ultimate termination of the litigation. The United States Supreme Court in *Van Cauwenderghe v. Biard*, 486 U.S. 517, 529-30 (1988), held that it is "undoubtedly true that in certain cases, the *forum non conveniens* determination will not require significant inquiry into the facts and legal issues presented by a case and an immediate appeal might result in **savings of time and expense for both the litigants and the courts**," and reiterated the significance of utilizing §1292(b) "as an avenue for review of *forum non conveniens* determinations in appropriate cases." [Emphasis added.].

The Fifth Circuit has never been shy about vacating a judgment following a trial where it concludes the case should have been dismissed at the outset on *forum* grounds. *See, eg., Gonzalez, supra,* at 881. "Although the fact that a trial on the merits has occurred is a factor meriting consideration in determining whether the trial court abused its discretion in refusing to grant the motion to dismiss we believe Neptuno has shown sufficient prejudice to warrant vacating that judgment and, in effect, transferring the case to Peru....To the admonition of *Air Crash* to put on the record adequate detailed reasons for action in granting or denying motions to dismiss forum non conveniens, we would add that trial judges should be hospitable to applications for Interlocutory Appeals under ... 1292(b)." [Footnote omitted.] *Id.* The basic tenet of *Gonzalez* is that while an interlocutory appeal may at first blush appear to slow things down it actually has the opposite effect: it provides the Fifth Circuit with an early opportunity to resolve one of the more dispositive issues in the case.

MSIC respects and appreciates this Court's interest in providing a forum for the plaintiffs. There are 210 plaintiffs in this case but it is important to note that they are comprised overwhelmingly of heirs. The International Atomic Energy Agency ("IAEA") concluded unequivocally that 28 – no more and no fewer – individuals sustained varying degrees of over-radiation. *See* Exhibit A, pp. 65-71. The spectrum was such that on one end, the over-radiation cost some patients their lives. *Id.* On the other end of the spectrum, for some of the 28 patients there were "[n]o radiation effects at this time [*i.e.,* the date of the report] felt to be attributed to the accidental exposure." *Id.,* pp. 72-73.[1]

When the plaintiffs first filed their lawsuit in Missouri in October 2001, fifteen of the plaintiffs had already passed away either from the cancer for which they were receiving radiation treatment or from the over-radiation. *See* Exhibit B. For reasons never satisfactorily explained by plaintiffs, their initial Missouri lawsuit alleged over-radiation to 30 individuals, two more than the IAEA total. When the plaintiffs filed suit in Missouri the second time in August 2005, they alleged (in four simultaneously-filed lawsuits) that 34 persons (again, with no explanation as to why they included persons in addition to the 28) had been over-radiated and that 27 of them had passed away. *See* Exhibit C. According to an article dated May 9, 2007, appearing in a newspaper in Panama, of the 28 persons who the IAEA concluded had been over-radiated, 24 have passed away. *See* Exhibit D. Accordingly, this litigation has always primarily been, even from the outset, a wrongful death case.

The plaintiffs could have filed suit in Panama at the outset in October 2001. Had they done so, the litigation no doubt would have run its course a long time ago. The fact that the

---

[1]  The reference on p. 72 of the IAEA report to an over-radiation incident in Costa Rica is unrelated to Defendant MSIC.

litigation remains pending after a long period of time does not mean that an interlocutory appeal to the Fifth Circuit now would not materially advance the litigation. Indeed, to obtain the Fifth Circuit's opinions on the issues encompassed in the Court's Order of April 30 would very much let the parties know in no uncertain terms where they stand.

This Court has previously recognized, in similar cases where jurisdictional issues have been before the Court, as in this case here, that "tremendous expense to all Parties involved," is a real concern as is the possibility that the parties would "proceed to judgment after considerable expense and delay, only to discover that the judgment must be overturned on appeal because the federal judiciary lacks… jurisdiction." *See Lemery v. Ford Motor Co.,* 244 F.Supp.2d 720, 728 (S.D. Tex. 2002).

There is no question that an immediate appeal from this Court's Order denying Defendant's motion to dismiss encompasses the potential likelihood of materially advancing the ultimate termination of this lawsuit. As such, if this were to be the case, it would escape the exhaustive and unnecessary time and expense of an elaborate discovery process and it would also save this Court's precious judicial resources in avoiding a lengthy complex trial.

### III. CONCLUSION

For all the reasons aforementioned, Defendant Multidata Systems International Corporation respectfully moves this Court for certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## III. CONCLUSION

For all the reasons aforementioned, Defendant Multidata Systems International Corporation respectfully moves this Court for certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel, in accordance with the Federal Rules of Civil Procedure, on this 14th day of May 2007.

Francis I. Spagnoletti
SPAGNOLETTI & CO.
1600 Smith Street, 45th Floor
Houston, Texas 77002-7348

Jeffrey K. Suess
Attorney at Law
1 South Memorial Drive, Suite 1800
St. Louis, Missouri 63102

James R. Watkins
Rynearson, Suess, Schnurbusch & Champion, L.L.C.
2102 Mechanic Street, Suite 205
Galveston, Texas 77550

_____
Douglas W. Poole

## TABLE OF CONTENTS

I. 28 U.S.C. § 1292(b) .................................................................................................. 1

    A. There are Controlling Questions of Law as to Which There are Substantial Grounds for Difference of Opinion in this Case. ..................................... 2

        1. Question of Law: Can the refusal to give *res judicata* effect and/or direct estoppel effect to the Missouri courts' *forum non conveniens* rulings be upheld as a matter of law where the Missouri courts left open to the plaintiffs an avenue for returning to Missouri? This Honorable Court answered this controlling question of law in the affirmative. There is substantial ground for the Fifth Circuit to have a difference of opinion on this question. .................. 2

        2. Question of Law: Can there be, as a matter of law, a finding of "continuous and systematic contacts" by a foreign corporation with no other ties to Texas which sold $130,000 worth of goods to Texas businesses over the course of five years? This Honorable Court answered this controlling question of law in the affirmative. There is substantial ground for the Fifth Circuit to have a difference of opinion on this question. .......................................... 3

        3. Question of Law: Can there be, as a matter of law, a finding of "continuous and systematic contacts" by a foreign corporation with no other ties to Texas because it sold $130,000 worth of goods to Texas businesses because the goods might potentially be used in the treatment of Texas-based patients? This Honorable Court answered this controlling question of law in the affirmative. There is substantial ground for the Fifth Circuit to have a difference of opinion on this question. ................................................................ 4

        4. Question of Law: Can there be, as a matter of law, a finding of "continuous and systematic contacts" by a foreign corporation which sold $130,000 worth of goods to Texas businesses located in eight Texas cities over the course of five years? This Honorable Court answered this controlling question of law in the affirmative. There is substantial ground for the Fifth Circuit to have a difference of opinion on this question. .......................................... 5

        5. Question of Law: Can there be, as a matter of law, a finding of fair play and substantial justice, in conjunction with subjecting a Defendant to personal jurisdiction in a forum from which compulsory process over witnesses and documents cannot be issued? This Honorable Court answered this controlling question of law in the affirmative. There is substantial ground for the Fifth Circuit to have a difference of opinion on this question. ............... 6

    B. An Immediate Appeal from the Order May Materially Advance the Ultimate Termination of the Litigation. ................................................... 7

II. CONCLUSION ....................................................................................................... 9